2 Ill. App.3d 750 (1971)
277 N.E.2d 341
In re ESTATE OF ALICE PRYCE GEORGEN, DECEASED.
No. 71-41.
Illinois Appellate Court  Third District.
December 28, 1971.
*751 Carroll, Connelly & Hartigan, of Chicago, for appellant.
Robert P. Boeye, of Rock Island, for appellee.
Judgment affirmed.
Mr. PRESIDING JUSTICE ALLOY, delivered the opinion of the court:
Rock Island Bank and Trust Company, Administrator with Will Annexed of the Estate of Alice Pryce Georgen, deceased (in Illinois Ancillary *752 Proceedings), appeals from an order of the Circuit Court of Rock Island County entered on February 26, 1971, denying the petition of such ancillary administrator to charge certain real estate with the expenses of administration, State Inheritance taxes, and Federal Estate taxes, etc. The testamentary trustee under the will of the decedent, Alice Pryce Georgen, the First National Bank of Rock Island, defended as appellee.
Alice Pryce Georgen died a resident of Sarasota, Florida, on December 1, 1965, leaving her surviving husband, Wendell Lattner Georgen as her only heir at law. Decedent never had any natural children nor had she adopted any children during her lifetime. At the time of her death she left a last will and testament dated October 25, 1965, and a codicil thereto dated November 10, 1965. The will and codicil were admitted to probate in Florida and Palmer First National Bank and Trust Company of Sarasota, Florida, was appointed Executor of her Estate in Florida. In view of the fact that decedent had died owning an undivided one-third (1/3) interest as a tenant in common in certain Rock Island County farm real estate in Illinois (herein referred to as "The John R. Pryce Farms"), ancillary probate proceedings were instituted in the Circuit Court of Rock Island County. The will and codicil executed by the decedent, and admitted to probate in Florida, were also admitted to probate in the Illinois proceedings and plaintiff in this action was appointed Administrator with Will Annexed.
In decedent's will executed on October 25, 1965, she provided that the debts, expenses of decedent's last illness, funeral expenses, expenses of administration, inheritance taxes and estate taxes should be paid from and charged against the principal of her residuary. Pertinent articles of the will were Articles III and IV which provided as follows:
"ARTICLE III. I give and bequeath all of my feminine rings, feminine jewelry, furs and feminine clothing, to my niece, Jane Criswell, if she survives me. I give and bequeath all of my personal and household effects such as automobiles, furniture, furnishings, silver, dishes, books and pictures, (including policies of insurance, if feasible) to my beloved husband, Wendell Lattner Georgen, if he survives me by thirty (30) days.
ARTICLE IV. I give, devise and bequeath all the rest, residue and remainder of my estate, being all personal, real and mixed property, wheresoever situated, in which I have any interest at the time of my death, including any property over which I have any power of appointment, to my hereinafter named Trustee * * *."
The trust established by the will directed the trustee to pay the trust income to the decedent's husband during his life, with various gifts over to decedent's blood relatives. In the will, the trustee was also given a *753 discretionary right to invade the principal of the trust for the benefit of decedent's husband should that be necessary for the husband's reasonable comfort and support.
In the codicil executed by decedent on November 10, 1965, she changed her estate plan substantially. Under the codicil, Articles III and IV were amended to read (in relevant parts) as follows:
"ARTICLE III. (a) I give and bequeath all of my feminine rings, feminine jewelry, furs and feminine clothing, to my niece, Jane Criswell, if she survives me.
(b) I give, devise and bequeath all the rest of my personal property and all of my real estate, wheresoever situated, except any interest which I have at the date of my death in those three farms which are commonly known as `The John R. Pryce Farms' which are located in the County of Rock Island, in the State of Illinois, within about two (2) miles of the City of Moline Airport, to my beloved husband, Wendell Lattner Georgen, if he survives me by thirty (30) days.
ARTICLE IV. I give, devise and bequeath all the rest, residue and remainder of my estate, being all personal, real and mixed property, wheresoever situated, especially including herein any interest which I have at the date of my death in those three farms which are commonly known as `The John R. Pryce Farms' which are located in the County of Rock Island, in the State of Illinois, within about two (2) miles of the City of Moline Airport, including any property over which I have any power of appointment, to my hereinafter named Trustee * * *."
The codicil, it is noted, changed the testamentary trust provisions to prevent the trustee from invading the principal of the trust and specifically provided that the husband was not to have any power to invade the principal of the trust. The codicil also in an amendment to the will expressed an intention and request that the trustee retain any interest which decedent owned at the date of her death in The John R. Pryce Farms irrespective of any lack of diversification, risk or nonproductivity.
It appears from the record that the gross date of death value of decedent's interest in "The John R. Pryce Farms" was $180,323.66. Other properties which were subject to Florida probate were worth $48,141.49. Expenses and taxes which were in litigation in this action amounted to $38,652.40 which were paid or advanced by plaintiff and the Palmer First National Bank and Trust Company of Sarasota, Florida. The record also shows that certain portions of "The John R. Pryce Farms" were sold in condemnation proceedings and as a result of the sale the trustee now holds (in addition to the remaining portions of the real estate) cash and securities in the approximate value of $65,000.
*754 Following a hearing in the trial court such court denied plaintiff's petition for reimbursement from the trustee. The trial court found that decedent intended to specifically devise her interest in "The John R. Pryce Farms" to her testamentary trustee, and that the residuary clause of her will was Article III (b) in the Codicil quoted above. As a result of such determination, the trial court found that the debts, taxes and costs of administration of the estate were to be borne by the residuary legatee, decedent's husband, or to be satisfied out of the assets bequeathed to the husband.
On appeal in this Court, plaintiff contends that the residuary estate under decedent's will is clearly the principal of the testamentary trust, and that in accordance with the manifest intent of the decedent as expressed in Articles I and II of her will, republished by her codicil, the trust, as the residuary estate, must bear the expenses for which reimbursement is sought in this action. Plaintiff refers to the principle that ambiguities in the Will shall be resolved in favor of testator's heirs at law (i.e., decedent's husband), in preference to those not so closely related. (Boys v. Boys, 328 Ill. 47, 51, 159 N.E. 217.) It is particularly pointed out that as a result of the trial court's ruling the decedent's husband's net probate receipts will be only $9,489.09 ($48,141.49 less taxes, fees, etc. of $38,652.40) while the principal beneficiaries of the testamentary trust will realize $180,323.66 free of all claims for taxes, funeral expenses and other expenses of administration of the estate.
 1-4 Normally we would find that a clause in which the traditional language of "all the rest, residue and remainder" was used, should be construed as the residuary estate for the purpose of payment of expenses of administration and taxes as herein referred to. We do not, however, believe that the presumption in the Boys case should be applied in the instant case. To do so we feel would require us to disregard the language of decedent's will and her intent as expressed therein. Under the precedents in the State of Illinois as expressed in Barnhart v. Barnhart, 415 Ill. 303, 313, 114 N.E.2d 378, it is stated that:
"In construing a will the question for determination by the court is not what the testator meant to say but rather what he meant by what he did say. The primary rule of construction is that the intention of the testator as expressed in his will governs the distribution of his estate. The intention of the testator, once it has been ascertained, will be given full effect unless to do so would violate some settled rule of law or be contrary to public policy. * * * All rules of construction yield to the intention of the testator * * *."
This rule of construction is well settled in the State of Illinois.
As noted in the will, from Articles I and II there is clearly manifest *755 the decedent's intent that the debts, funeral expenses and the expenses of administration, and estate and inheritance taxes be paid from her residuary estate. The question for determination is to ascertain what was meant by testatrix by her reference to her residuary estate. In Article III (a) of the will, as amended by the codicil, decedent specifically bequeathed her feminine jewelry, furs, and clothing to her niece. Then in Article III(b) she gave all the rest of her personal property and all of her real estate, except her interest in "The John R. Pryce Farms," to her husband if he survived her for a period of thirty (30) days. In the event her husband did not survive her, all the property which would have gone to her husband, had he survived her, was to go to her testamentary trustee. It is, therefore, clear from the will, as amended by the codicil, that in no event did decedent intend that her interest in "The John R. Pryce Farms," other than the income therefrom, should go to her husband. Thus, she specifically excepted "The John R. Pryce Farms" from Article III(b) and expressly included the farms in Article IV. We have noted that in Article IV her husband was not to have power to invade the principal of the trust, which (if he survived her) would consist solely of her interest in "The John R. Pryce Farms."
 5 Under the foregoing plan of disposition, we agree with the court that it is clear that decedent made only one specific bequest in her will, that being the bequest of her feminine personalty to her niece in Article III(a). Only in this bequest did decedent express or designate and segregate certain physical property for particular disposition which by definition constitutes a specific bequest thereof (In Re Estate of Riddel, 247 Ill. App. 175). In contrast thereto, in Article III(b) in speaking of "all the rest of my personality, and of my real estate" and in Article IV in speaking of "all the rest, residue and remainder of my estate," she made general residuary bequests. In each case she spoke of property not theretofore dealt with. The two residuary bequests were apparently deemed to be necessary by decedent because of her manifest desire that in no case should her husband share in the principal of her interest in "The John R. Pryce Farms. If he did not survive her for 30 days, the two residuary clauses would merge, and everything other than the feminine personalty would pour into the testamentary trust. In such event both the personalty which was bequeathed to the husband and the farm real estate would comprise the residuary.
 6 While the classical term "residue" is not found in Article III(b), the language "all the rest" does appear and certainly implies an intended residuary clause as to the personalty. As observed in In Re Estate of Betts, 2 Ill. App.2d 453, 459-60:
"No particular words or mode of expression is necessary to constitute *756 a residuary clause * * * the testator does not use the word `residuary,' but his clear intention is to create a residuary estate. He leaves to his brother * * * `all of my personal property not herein otherwise disposed of.' This clearly discloses an intention to create a residuary estate."
 7 The cases of Retzinger v. Retzinger, 239 Ill. App. 127, reversed on procedural grounds, 331 Ill. 102, and Reid v. Corrigan, 143 Ill. 402, 32 N.E. 387, relied upon by plaintiff, we believe, are distinguishable from the case before us. In the Retzinger and Reid cases, the testators had bequeathed all their personal property to their wives, and after subsequent specific bequests and devises, used the classic residuary language ("all the rest and residue of my real and personal property;" "all the rest, residue and remainder of all my real estate") in creating the residuary estates. Those cases thus held that certain debts or legacies should be charged against realty in the residuary estate. In the Retzinger case, the court was involved in resolving a conflict between persons holding a specific devise of real estate and residuary devisees, since there was no personal property, and thus the case was clearly inapplicable on its facts. In the Reid case the court felt that the intention of the testator was to exonerate his personal property from payment of specific legacies and to charge his residuary real estate therewith. The court, in the Reid case, we believe, was able to ascertain this intent because there was clearly only one clause of the will containing residuary language, whereas in the case before us we have two, both of which, if possible, should be given effect (Carr v. Herman, 16 Ill.2d 624, 158 N.E.2d 770). As stated in O'Hare v. Johnston, 273 Ill. 458, 466, 113 N.E. 127:
"Cases on wills may serve to guide us with respect to general rules in the construction of devises in wills, but unless a case cited be in every respect directly in point and agree in every circumstance with that in question it will have little or no weight with the courts, who always look upon the intention of the testator as the polar star to direct them in the construction of wills."
 8, 9 We conclude, accordingly, that Article III(b) and Article IV of decedent's will, as amended by the codicil, both provided for residuary dispositions. It, therefore, follows that taxes and expenses of administration, etc. must be paid from such assets bequeathed and devised by such articles, which together constitute the residuary estate of decedent. While this would result in an equitable apportionment of such obligations under the law presently in force in this State (Ill. Rev. Stat. 1969, ch. 3, par. 225) under the law which was in force at the time of decedent's death, prior to January 1, 1966, the personalty was required to be first exhausted in paying expenses and taxes before recourse is had *757 to the realty in the estate (Ill. Rev. Stat. 1965, ch. 3, par. 225; Lawless v. Lawless, 17 Ill. App.2d 481, 150 N.E.2d 646; Suiter v. Suiter, 311 Ill. App. 618, 37 N.E.2d 561). We cannot, however, direct any procedure as to payment of expenses and taxes other than as provided by the statute in effect at the time of the death of decedent.
 10 It is also clear that the proceeds from the portions of "The John R. Pryce Farms" taken by condemnation subsequent to decedent's death are nevertheless considered as real estate with respect to the rights and interest relating thereto. (Mayer v. McCracken, 245 Ill. 551.) We conclude that taxes and expenses sought to be charged against the property in the hands of the trustee in this cause were in fact a prior charge against the residuary personalty not included in the trust, the value of which is sufficient to pay the obligations in full. We, therefore, agree with the result reached by the trial court in denying plaintiff's petition. The reasons stated for such conclusion by the trial court would not be material. People ex rel. Nelson v. Joliet Trust and Savings Bank, 315 Ill. App. 11, 42 N.E.2d 90.
The judgment of the Circuit Court, therefore, is affirmed.
Judgment affirmed.
STOUDER and DIXON, JJ., concur.