(No. 56835.—

*In re* Estate of WENDELL BRIDGES, Deceased (Rosemary Bridges, Ex'r, Appellant, v. Billy Bridges *et al.*, Appellees).

*Opinion filed March 25, 1983.*

Leonard T. Flynn, of Franklin, Flynn & Palmer, of Champaign, for appellant.

Philip A. Summers, of Summers, Watson & Kimpel, of Champaign, for appellees.

JUSTICE GOLDENHERSH delivered the opinion of the court:

The circuit court of Champaign County overruled the objections filed by Billy Bridges and Timmy Bridges (hereafter objectors) to the final report of Rosemary Bridges, executor of the estate of Wendell Bridges, and approved the report. The appellate court, in an order pursuant to Rule 23 (87 Ill. 2 R. 23), reversed (104 Ill. App. 3d 1213), and we granted the executor's petition for leave to appeal (87 Ill. 2d R. 315).

The testator, Wendell Bridges, was a contractor in the Champaign-Urbana area. He executed a will on May 29, 1979, and died on July 2, 1979, survived by his widow, who is the executor, and the objectors, who are his sons by a prior marriage.

Article FIRST of the testator's will provided that all of his debts, expenses of his funeral and all taxes be paid from the residuary portion of his estate. Article SECOND bequeathed to the executor cash and personalty not here in question. Articles THIRD through FIFTH provided:

"THIRD. In the event that my beloved wife, ROSE-MARY BRIDGES, survives me, I do hereby give and bequeath unto her, absolutely, all of my interest in and to

the following:

A. All beneficial interest owned by me under the terms of Land Trust Agreement dated December 1, 1976, The Commercial Bank of Champaign, Trustee thereunder, the same being known as Trust No. 43-252.

B. All beneficial interest owned by me under Declaration of Trust dated June 27, 1974, The Champaign National Bank, Trustee thereunder, and known as Trust No. 032-561-003.

I do further give and bequeath unto my wife all of my interest as a general partner under the terms of Limited Partnership Agreement dated June 25, 1974, covering and concerning a limited partnership known as "Sunnycrest Apartments," the same covering and concerning the real estate which forms the corpus of the last described land trust.

FOURTH. If my wife survives me, I give, devise and bequeath unto her absolutely property which is exclusively of such a nature that a marital deduction will clearly be allowed in respect thereto, pursuant to the provisions of the then applicable United States Internal Revenue Code, and which has a total value equal to thirty-three and one-third percent (33⅓%) of the value of my adjusted gross estate, as finally determined for federal estate tax purposes, not including, however, in such computation, the value of the property interests herein specifically devised and bequeathed to my wife in Article THIRD above appearing, those interests passing to her as a result of being a surviving joint tenant in a joint tenancy established between us, and also not including any life insurance proceeds payable to my wife as a designated beneficiary under a policy insuring my life, it being my intention and direction that all of the property interests described in Article THIRD, joint tenancy interests and life insurance proceeds shall pass to my wife in addition to thirty-three and one-third percent (33⅓%) of my adjusted gross estate, all of such interests plus the interest herein devised and bequeathed, to pass to her absolutely. With regard to property of my estate that shall pass to my wife under the terms of this Article, I direct that my Executor shall have the power to select the prop-

erty to be distributed to my said wife, but any property distributed in kind shall be valued at its fair market value on the date of distribution. No property shall be used to satisfy this gift as to which a marital deduction is not allowable. This gift shall abate to the extent that it cannot be satisfied in the manner above provided.

FIFTH. In the event that any of my children or their issue survive me, I do hereby give, devise and bequeath my residuary estate to the Trustee and successor Trustee herein named, IN TRUST, for the following uses and purposes:

A. I direct that the Trustee herein named shall divide all the residue of my estate, or the Trustee shall divide the entirety of my estate in the event that my wife has predeceased me, into separate and equal trusts, one trust for each child of mine then living and one trust (on a per stirpes basis) for the then living descendants of each child of mine who is deceased. The share thus attributable to any child of mine who has attained the age of thirty-five (35) years shall be immediately distributed to such child free and clear of the terms of this trust and the share attributable to any child of mine under the age of thirty-five (35) years shall be held and administered as below provided.

\* \* \*."

The gross estate of the decedent as reflected on Illinois inheritance tax forms was valued at $829,911.98 and consisted of the following:

| | |
|---|---:|
| Cash, deposits, notes & stock | $485,185.03 |
| Personal property | 12,000.00 |
| Interest in businesses & partnerships | 261,795.42 |
| Decedent's joint tenancy interests | 52,258.85 |
| Other property, unspecified in the record | 18,672.68 |
| Total | $829,911.98 |

Allowable deductions equaled $53,866.63, leaving an adjusted gross estate for Federal tax purposes of $776,045.35.

The final distribution proposed by the executor in her report, to herself as surviving spouse under the will, and

the amounts received by her through operation of law consisted of the following:

| | |
|---|---|
| Article THIRD property | $261,795.42 |
| Joint tenancy property | 47,017.71 |
| Proposed Article FOURTH distribution | 258,681.78 |
| Insurance proceeds | 14,340.07 |
| Total | $581,834.98 |

Objectors contended in the circuit court that under article FOURTH of the testator's will the executor was to receive not one-third of the adjusted gross estate, but one-third of the adjusted gross estate less the value of the property interests passing to her under article THIRD of the will, those passing to her as survivor under the joint tenancies and the proceeds of life insurance in which she was designated as the beneficiary. In overruling the objections and approving the final report, the circuit court stated:

"The clearly expressed intent of the testator is to provide that one-third of the adjusted gross estate, as that phrase is used for federal estate tax purposes, passed to the surviving spouse *plus* all joint tenancy and Article Third properties and insurance proceeds.

While the computation language in the paragraph is perhaps not as clear a statement of that intent as is later language, that computation language is not inconsistent with the above-recited intent, nor does it dictate a result other than that urged by the executor."

The appellate court disagreed with the circuit court. In its Rule 23 order, the appellate court stated that there were two possible interpretations of the fourth article of the will. It pointed out that the words "adjusted gross estate" were followed by the language "not including, however, in such computation, the value of the property interest herein specifically devised and bequeathed to my wife in article THIRD above appearing, those interests passing to her as a result of being a surviving joint tenant in a joint tenancy established between us, and also not including any life in-

surance proceeds payable to my wife as a designated bene-
ficiary under a policy insuring my life \*\*\*." The appellate
court continued:

> "There thus arises by virtue of this language and the
> further language beginning with 'it being my intention
> and direction that all of the property interests described
> in Article THIRD, joint tenancy interests and life insur-
> ance proceeds shall pass to my wife in addition to thirty-
> three and one-third percent (33⅓%) of my adjusted gross
> estate, all of such interests plus the interest herein de-
> vised and bequeathed, to pass to her absolutely' an incon-
> sistency with the previous clause admitting of two possi-
> ble constructions. First, it could have been intended that
> the Article Third property, joint tenancy property and life
> insurance proceeds, were to pass outside the one-third in-
> terest, yet be included in the adjusted gross estate basis
> from which the one-third interest was computed. Alterna-
> tively, such property could have been intended not to
> have been included in the adjusted gross estate basis
> from which the one-third was taken. The ambiguity thus
> turns on the word 'computation' and the question arises
> as to which 'computation' or part of such computation the
> Article Third property, joint tenancy property and life in-
> surance property, was to be excluded. Either approach is
> equally plausible from a literal standpoint, but yet each is
> not without difficulty."

The appellate court then noted, *inter alia*, that if the exec-
utor's construction were adopted, the objectors' trusts
would be grossly underfunded and could not possibly pay
out $15,000 annually for more than three years, although
under the will they were to continue for approximately 15
years longer. The appellate court reasoned that the will
was drafted approximately one month before the testator's
death, and assuming that he had some knowledge as to the
nature and extent of his property, he would not have in-
tended the construction of the will proposed by the execu-
tor. Finally, the appellate court disagreed with the objec-
tors that language in the fourth article limited the amount
the executor could receive to the amount which equaled

the maximum marital deduction, but rather that the language employed was only intended to limit the type of property passing to her, but not the value.

The executor contends that the appellate court erred in construing the phrase "my adjusted gross estate" in that it failed to give the phrase its commonly accepted meaning. She argues that failure to construe the phrase "adjusted gross estate" in accordance with the definition contained in the United States Internal Revenue Code places in jeopardy many wills using such phrases. She argues, too, that the appellate court erred in holding that where an ambiguity exists a plan of disposition will be adopted which is closely aligned to the statute of descent. Here, she argues, the testator's obvious intention was not to divide his estate in accordance with an intestate formula for distribution.

The executor contends that the word "computation" refers to the calculation of the "total value equal to thirty-three and one-third percent" and not to the calculation of the value of the adjusted gross estate. Thus, she argues, no ambiguity exists and the later phrase "it being my intention and direction that all of the property interests described in Article THIRD, joint tenancy interests and life insurance proceeds shall pass to my wife in addition to thirty-three and one-third percent (33⅓%) of my adjusted gross estate all of such interest plus the interest herein devised, bequeathed, to pass to her absolutely" dispels the construction which objectors seek to place on this article. She suggests that the underfunding of objectors' trusts could be due to the fact that the testator might not have known the value of his property for purposes of Federal estate taxes and also argues that the valuations used for inheritance tax purposes may be lower than their actual values.

The objectors argue that the appellate court was correct in deducting the value of the joint tenancies, life insurance proceeds, and the third-article bequests from the ad-

justed gross estate before calculating the one-third interest to be granted to the executor. Objectors contend also that testator limited his bequest to the executor to property having a value equal to the marital deduction. Objectors argue that the language "No property shall be used to satisfy this gift as to which a marital deduction is not allowable," and "This gift shall abate to the extent that it cannot be satisfied in the manner above provided" clearly evidences this intention.

We agree with the appellate court's construction of the fourth article. The primary purpose in construing a will "is to determine the testator's intention from the will as a whole and to give it effect." (*Feder v. Luster* (1973), 54 Ill. 2d 6, 10; *Whitmore v. Starks* (1959), 17 Ill. 2d 202, 206.) The intention of the testator should be determined from the will by giving every word, phrase and clause in the will effect if possible (*Feder v. Luster* (1973), 54 Ill. 2d 6, 11; *Whitmore v. Starks* (1959), 17 Ill. 2d 202, 206), but if an ambiguity in the will cannot be resolved through the examination of the will as a whole, the court may examine the circumstances which existed at the time the testator executed the will to determine his intention (*Weber v. Hawkins* (1964), 30 Ill. 2d 278, 283-84; *O'Connell v. Gaffney* (1962), 23 Ill. 2d 611, 614). Here, testator executed his will only 34 days before his death. He was apparently aware of his impending death, as he was hospitalized at the time of his death due to metastatic cancer of his pancreas. Testator's sons, as was revealed at oral argument, were in their early 20's when he died. The trusts established by the fifth article are required to distribute $15,000 annually to each of the sons until they attain the age of 35. As noted by the appellate court, this scheme of distribution could not be carried out for more than three years if the executor's construction of the fourth article is accepted, because the trusts would not have received sufficient funds. We are unpersuaded by the executor's contention that her

husband, an apparently successful contractor, was so unaware of the value of his assets that he would execute a will with such grossly underfunded trusts for the benefit of his children. Moreover, the precise manner in which the will identifies testator's property and provides for its disposition tends to negate any inference that he was laboring under a misconception as to the extent of his holdings. We also cannot accept the executor's argument that the valuations appearing in the inheritance tax returns are underestimated and that the trusts will not be severely underfunded. Adequate funding of the trusts would require that the value of the property be several times greater than the values included in the tax returns.

We also agree with the appellate court that the fourth article does not limit the gift to the executor under that article to the maximum marital deduction allowed under Federal estate tax law. As the appellate court noted, the article only limits the "nature" of the property which passes to her under that article. Moreover, no plausible explanation appears as to why testator used the complex computation formula appearing in article FOURTH if he meant to give his wife only an amount equal to the marital deduction. To adopt objectors' construction concerning this limitation would, in our opinion, misconstrue the testator's intent in determining the gift to the executor under this article. (*Feder v. Luster* (1973), 54 Ill. 2d 6, 11; *Carr v. Hermann* (1959), 16 Ill. 2d 624, 628.) The judgment of the appellate court is affirmed.

*Judgment affirmed.*