*In re* ESTATE OF ELINOR E. LAAS, Deceased (Charles L. Martin, Ex'r of the Will of Elinor E. Laas, Deceased, *et al.*, Plaintiff and Counterdefendant-Appellee, v. Robert M. Laas II *et al.*, Defendants; Arthritis Foundation *et al.*, Defendants and Counterplaintiffs-Appellants; Robert M. Laas II, Counterdefendant-Appellee).

First District (2nd Division)   No. 84—2169

■

Opinion filed June 25, 1985.

Howard M. McCue III, Charles F. Newlin, and P. Terrence Buehler, all of Mayer, Brown & Platt, of Chicago, for appellants.

Daniel M. Schuyler, Carol M. Petersen, and Roberto R. Ruelo, all of Schuyler, Roche & Zwirner, and Walter R. Baron, both of Chicago, for appellee Charles L. Martin.

James S. Teborek, of Lamet, Galatzer & Associates, of Chicago, for appellee Robert M. Laas II.

JUSTICE HARTMAN delivered the opinion of the court:
In an action for construction of a will, limited to establishing a valid charitable remainder unitrust, certain beneficiaries of the trust

brought a counterclaim against the executor and the other beneficiaries under the will.

The counterclaim sought to establish the existence of ambiguities in the will requiring judicial construction; however, the circuit court found the will clear and unambiguous and granted counterdefendants' motion to dismiss the counterclaim. Counterplaintiffs filed this timely appeal.

The issues presented on appeal are whether ambiguities exist in the will requiring judicial construction because of: (1)(a) the use of the phrase in the will, "adjusted gross estate as finally determined for Federal estate tax purposes"; (b) the fact that preresiduary bequests would partially abate; and whether: (2) the circuit court committed error by failing to give full effect to all language of the will; (3) and the circuit court erred in finding that the tax burden must fall on the residue of decedent's estate.

On May 6, 1975, Elinor Laas (decedent) executed a will, the relevant portions of which may be summarized as follows:

Article First provides for the payment of all death taxes from the principal of the residue of decedent's estate.

Article Second seeks to establish a charitable remainder unitrust in an amount equal to 25% of decedent's "adjusted gross estate as finally determined for Federal estate tax purposes." Under this article, decedent's son, Robert Laas, is to receive annually for his life an amount equal to 5% of the net fair market value of the trust property. At his death, the principal and any unpaid income is to be distributed in equal one-third shares to the Illinois Chapter of the Arthritis Foundation, the Illinois Division of the American Cancer Society, and the Chicago Heart Association (the charities).

Article Third, Fourth, Fifth and Sixth provide for bequests to various relatives and in-laws totaling 25% of decedent's adjusted gross estate as finally determined for Federal estate tax purposes.

Article Seventh provides that the residue of the estate shall be divided equally among the charities.

On November 5, 1975, decedent executed a codicil to the will in which she increased the bequest to the charitable remainder unitrust created in Article Second to an amount equal to 50% of her adjusted gross estate as finally determined for Federal estate tax purposes. She was adjudicated incompetent on January 28, 1976, and Charles L. Martin was appointed conservator of her estate. She died on June 16, 1983, and Martin was appointed executor of her estate.

Martin filed a complaint in the circuit court seeking construction of the will so as to establish a valid charitable remainder unitrust as

provided in Article Second. The complaint named as defendants the beneficiaries under the will and codicil. In their answer to the complaint, the charities set forth a counterclaim against Martin as executor, and against the other beneficiaries. The counterclaim alleged, among other things, that the residuary gift to the charities under Article Seventh would be entirely eliminated if the executor's interpretation of the will were to prevail, and that certain ambiguities were present in the will which required construction. Counterdefendants Martin and Robert Laas filed motions to dismiss the charities' counterclaim with a supporting memorandum, to which the charities filed a memorandum in opposition.

The circuit court heard argument on these motions, found the will clear and unambiguous, and issued an order dismissing the charities' counterclaim. The appeal is appropriate in context of an order entered in the administration of an estate. 87 Ill. 2d R. 304(b)(1).

I

■■ The charities claim first that the circuit court erred in failing to find an ambiguity in the will's use of the phrase "adjusted gross estate as finally determined for Federal estate tax purposes" because when the will was executed the term "adjusted gross estate" as explained in section 2056(c)(2) of the Internal Revenue Code (I.R.C. sec. 2056(c)(2) (1975)) related solely to the Federal estate tax marital deduction which was available in the event a decedent was survived by a spouse. Since decedent was a widow, and no marital deduction could be claimed, the charities assert that decedent's adjusted gross estate for Federal estate tax purposes would never be determined, thereby giving rise to an ambiguity in the will, and the circuit court erred in finding that the term "adjusted gross estate" has a clear and established technical meaning which can form the basis of a bequest without reference to marital deductions.

The charities insist that a technical construction should not be applied to a will if to do so would defeat the obvious general intent of a testator. (*Papa v. Papa* (1941), 377 Ill. 316, 320, 36 N.E.2d 717; *Caracci v. Lillard* (1955), 7 Ill. 2d 382, 130 N.E.2d 514; *Thomas v. Stoakes* (1927), 328 Ill. 115, 159 N.E. 269; *Irish v. Profitt* (1975), 28 Ill. App. 3d 607, 330 N.E.2d 861.) Further, they argue, courts need not apply the technical meaning to the phrase "adjusted gross estate" when there is evidence of a testator's contrary intention (*In re Estate of Bridges* (1983), 95 Ill. 2d 383, 447 N.E.2d 830; *In re Estate of Hopkins* (Fla. App. 1977), 349 So. 2d 663), and maintain that there is evidence of such intent, thereby rendering the will ambiguous and in

need of construction. Moreover, they contend that the numerous corrections and revisions sought by the executor in the original complaint demonstrate the drafter's lack of understanding of the technical meaning of the terminology incorporated in the will, thus militating against a strict construction of those terms.

Although the term "adjusted gross estate as finally determined for Federal estate tax purposes" has been expressly and consistently defined in the Internal Revenue Code provision regarding marital deductions, which includes a computation formula (I.R.C. sec. 2056(c)(2) (1981)), the same definition and formula appear in a Code provision relating to closely held businesses (I.R.C. sec. 6166 (1984)), and is reflected in common usage in other authorities as general as Black's Law Dictionary 40 (5th ed. 1979). Under these definitions, an "adjusted gross estate" is reached by subtracting certain debts, administrative expenses and losses incurred by the estate from the gross estate.

Technical terms with established meanings are presumed to be used according to their technical meanings unless they are otherwise explained. (*Gridley v. Gridley* (1948), 399 Ill. 215, 222-23, 77 N.E.2d 146.) Here, decedent expressly provided that the term "adjusted gross estate" be given its estate tax meaning. The fact that no marital deduction is involved does not render ambiguous the use of the phrase "adjusted gross estate as finally determined for Federal estate tax purposes." Although there would be no express determination of the "adjusted gross estate" by the Internal Revenue Service in the instant case, it was clear when the will and codicil were drafted that a Federal estate tax return would be filed and that a determination would effectively be made when that return was either accepted as filed or adjusted on audit.

The authorities cited by the charities are not to the contrary. *In re Estate of Bridges* (1983), 95 Ill. 2d 383, 447 N.E.2d 830, does not hold that the phrase "adjusted gross estate" need not be given its Internal Revenue Code meaning, but rather that an ambiguity was present as to whether property specifically bequeathed under one article of a will should have been deducted from the "adjusted gross estate" before computing a surviving spouse's share of that estate; *In re Estate of Hopkins* (Fla. App. 1977), 349 So. 2d 663, is distinguishable because the will in that case did not, as here, modify the term "adjusted gross estate" with the phrase "for Federal estate tax purposes" and the court there relied on this failure in not applying the technical meaning to "adjusted gross estate." *Papa v. Papa* (1941), 377 Ill. 316, 36 N.E.2d 717, *Caracci v. Lillard* (1955), 7 Ill. 2d 382,

130 N.E.2d 514, and *Thomas v. Stoakes* (1927), 328 Ill. 115, 159 N.E. 269, each involved wills with inconsistent gift provisions, or undefined or unclear terms.

■ The object sought by judicial construction of wills is to ascertain and give effect to the testator's intent unless to do so would violate the law or public policy. (*In re Estate of Georgen* (1971), 2 Ill. App. 3d 750, 277 N.E.2d 341.) The intent sought is not that presumed to have been in the testator's mind but rather that which was expressed by language in the will. (*Bond v. Moore* (1908), 236 Ill. 576, 579, 86 N.E. 386.) Further, it is the duty of courts to construe wills as they are articulated rather than change or redraft them. (*Illinois Land & Loan Co. v. Bonner* (1874), 75 Ill. 315, 327.) Finally, the rules of construction are applicable only when the language in a will is so ambiguous that the testator's intent is in doubt; if the language is clear and unambiguous, the rules do not apply and an action for construction should be dismissed. (*Mitchell v. Snyder* (1949), 402 Ill. 279, 284, 83 N.E.2d 680; *Young v. Whisler* (1960), 19 Ill. 2d 501, 167 N.E.2d 191; *Jusko v. Grigas* (1962), 26 Ill. 2d 92, 186 N.E.2d 34.) The circuit court in the present case correctly found that phrase "adjusted gross estate as finally determined for Federal estate tax purposes" did not create an ambiguity because it has a clear and established meaning which can serve as a basis for determining a bequest outside the context of marital deductions.

## II

■ The charities also maintain that the instant will and codicil were latently ambiguous and in need of construction because under their terms the preresiduary legacies would abate. Where there are latent ambiguities, extrinsic evidence will be considered to determine the intent of a testator. (*Krog v. Hafka* (1952), 413 Ill. 290, 295-96, 109 N.E.2d 213.) This rule has been applied where legacies are in clear and unambiguous terms but the testator did not own the property described in the bequest (*Huff v. State Bank & Trust Co.* (1953), 414 Ill. 111, 110 N.E.2d 449; *Appleton v. Rea* (1945), 389 Ill. 222, 58 N.E.2d 854; *Alford v. Bennett* (1917), 279 Ill. 375, 117 N.E. 89), or where there is a latent ambiguity with respect to the identity of beneficiaries or the size of their respective shares under a bequest (*Ingalsbe v. Gough* (1971), 2 Ill. App. 3d 681, 277 N.E.2d 149; *Leibrandt v. Adler* (1961), 30 Ill. App. 2d 257, 174 N.E.2d 228). The charities maintain that the instant case is analogous to the foregoing cases in which testators attempted to make gifts that were impossible under the literal terms of the wills; therefore, the circuit court erred in rul-

ing that these facts did not raise an ambiguity requiring construction and improperly dismissed their action for construction.

The fact that some abatement of the preresiduary bequests may occur does not necessarily demonstrate latent ambiguity in the bequests, but may be a simple case of abatement governed by section 24—3 of the Probate Act of 1975. (Ill. Rev. Stat. 1983, ch. 110½, par. 24—3.) When the instant will was drawn in 1975, there would have been no abatement because the preresiduary bequests comprised only 50% of the estate; that the subsequent codicil results in some abatement does not create an ambiguity. Questions of latent ambiguity are raised where there is an incorrect description of a bequest or of a legatee or the description fits more than one object or person. (*Huff v. State Bank & Trust Co.* (1953), 414 Ill. 111, 110 N.E.2d 449; *Appleton v. Rea* (1945), 389 Ill. 222, 58 N.E.2d 854; *Alford v. Bennett* (1917), 279 Ill. 375, 117 N.E. 89; *Ingalsbe v. Gough* (1971), 2 Ill. App. 3d 681, 277 N.E.2d 149; *Leibrandt v. Adler* (1961), 30 Ill. App. 2d 257, 174 N.E.2d 228.) Here, there is simply a partial abatement of ascertainable bequests to ascertainable legatees. The finding of the circuit court to that effect in dismissing the charities' action for construction was appropriate and did not constitute error.

### III

■ Error is also identified by the charities in that the circuit court failed to give full effect to all the language of the will and codicil, contrary to *Feder v. Luster* (1973), 54 Ill. 2d 6, 10-11, 294 N.E.2d 293, and *Whitmore v. Starks* (1959), 17 Ill. 2d 202, 206-07, 161 N.E.2d 254. The charities assert that three provisions of the will were rendered meaningless by the circuit court's decision.

The first will provision claimed to have been defeated by the decision is the residuary bequest which will abate completely. The charities note that although a residuary gift may contemplate that there may be no residue to satisfy a bequest, courts seek to give effect to all will provisions including residuary clauses. (*Knisely v. Simpson* (1947), 397 Ill. 605, 609, 74 N.E.2d 695; *Strauss v. Strauss* (1936), 363 Ill. 442, 2 N.E.2d 699; *In re Estate of Franke* (1971), 133 Ill. App. 2d 160, 272 N.E.2d 795.) Also, courts have construed ambiguous preresiduary legacies so as to preserve or maximize the amount passing to residuary beneficiaries. (*In re Estate of Bridges* (1983), 95 Ill. 2d 383, 447 N.E.2d 830; *Mokros v. Blackman* (1941), 312 Ill. App. 346, 38 N.E.2d 514.) Thus, the charities maintain, the circuit court's decision, which will allow the residuary bequests to abate completely, improperly renders this portion of the will meaningless, as well as the

stated percentages of the estate which were to pass to the preresi-
duary legatees but which will abate partially and the provision in Arti-
cle Second, paragraph C, which contemplates that there will be a resi-
due passing to the charities under Article Seventh.

Unlike the instant case, *Knisely v. Simpson* (1947), 397 Ill. 605,
74 N.E.2d 695, *Strauss v. Strauss* (1936), 363 Ill. 442, 2 N.E.2d 699,
and *In re Estate of Franke* (1971), 133 Ill. App. 2d 160, 272 N.E.2d
795, involved wills with contradictory or incomplete language. Fur-
ther, *Mokros v. Blackman* (1941), 312 Ill. App. 346, 38 N.E.2d 514, is'
not applicable here, because it concerned the question of what re-
mains in the residue of an estate after a bequest of "personal ef-
fects." Finally, *In re Estate of Bridges* (1983), 95 Ill. 2d 383, 447
N.E.2d 830, is distinguishable, since the residuary bequest involved in
that case was to the testator's children for whom no other provision
had been made and was in the form of a trust with minimum funding.
The circuit court in the case *sub judice* did not erroneously fail to give
effect to certain provisions in the will, but rather made a finding
which simply will result in abatement of certain bequests. It should
also be noted that the existence of a residuary clause does not neces-
sarily indicate an intent to make a present gift to the charities, but
may have been considered necessary to prevent a bequest from laps-
ing in the event that a preresiduary beneficiary predeceased the dece-
dent. We see no failure to give effect to the will's provisions in the
circuit court's decision.

## IV

■ Lastly, the charities urge that the circuit court should have
found ambiguity in the will's provision in Article First for the pay-
ment of death taxes out of the estate's residue, because if the preresi-
duary legacies were paid out first there would not be sufficient assets
in the residue to satisfy the death taxes. This demonstrates, they con-
tend, that Article First could not be implemented and that the circuit
court erred in relying on it.

The provisions of the will as a whole make it clear that the death
taxes are to be paid out of the residue of the estate. Article First ex-
pressly directs that death taxes are to be paid out of the residue. In
the absence of such an express provision, the burden of estate taxes
falls on the residue in any event. (*In re Estate of Britt* (1983), 112 Ill.
App. 3d 186, 445 N.E.2d 367; *In re Estate of Maddux* (1981), 93 Ill.
App. 3d 435, 417 N.E.2d 266; *In re Estate of McClallen* (1957), 13 Ill.
App. 2d 413, 141 N.E.2d 883; *Moody Bible Institute v. Pettibone*
(1937), 289 Ill. App. 69, 6 N.E.2d 676.) The fact that the residuary

512

legatees were charities did not exempt them from the burden of death taxes in *In re Estate of Maddux* (1981), 93 Ill. App. 3d 435, 417 N.E.2d 266. We find no error in the circuit court finding that the tax burden must fall on the residue of decedent's estate and, further, that this did not create any will ambiguity.

For the foregoing reasons, we find no error and, accordingly, affirm the decision of the circuit court.

Affirmed.

STAMOS, P.J., and BILANDIC, J., concur.