In the Matter of the Estate of Laura H. Toigo, Deceased. Jerome B. Toigo, Appellant, v. Walter W. Ross, Jr., Special Guardian ad Litem-Administrator Pro Tem of the Estate of Laura H. Toigo, Deceased, Richard E. Shea and Jerome B. Toigo, Co-Executors of the Estate of Laura H. Toigo, Deceased, Harry Hull Toigo, II, Harris Trust & Savings Bank, as Guardian of the Estate of Harry Hull Toigo, II, a Minor, Appellees.

Gen. No. 68–133.

Second District.

March 24, 1969.

Goldsmith, Dyer, Thelin and Schiller, of Aurora, for appellant.

Peterson, Lowry, Rall, Barber & Ross, and Chapman and Cutler, of Chicago, for appellees.

PRESIDING JUSTICE MORAN delivered the opinion of the court.

This case arose out of a series of tragic events in which three members of one family died within a nine-month period. The controversy involves 900 shares of the common stock of the Pepsi-Cola Aurora, Elgin and Joliet Bottling Company, a family corporation.

In June, 1965, there were 2,500 shares of the company stock outstanding, 999 shares held by Pompey J. Toigo, the father and President of the company, 900 shares held by Laura Toigo, the mother and Secretary of the company, 300 shares held by Harry Toigo, the elder son, 300 shares held by Jerome Toigo, the younger son and petitioner in

this case, and 1 share held by one Harry Hull, father of Laura.

The father, Pompey Toigo died in June, 1965, leaving his wife a sufficient number of shares to give her 52 percent of the outstanding shares and dividing the remainder equally between his two sons. In effect, the father's will gave Laura Toigo another 400 shares, making her total 1,300 shares. Subsequently, Harry Toigo died on January 23, 1966. He was only 30 years of age at the time and he left surviving him his wife, Judith Toigo, who was then pregnant. On September 23, 1966, Judith Toigo gave birth to their only child, Harry Hull Toigo II.

Within a period of about six months then, Laura Toigo, the mother, had lost her husband and elder son, and Jerome Toigo, a young man of about 21 years of age, was quickly forced into the management of the company.

Laura Toigo had cancer since 1959, and was about to enter the hospital for another operation on the evening of February 4, 1966. During that day, to discuss various corporate problems, she met with her son, Jerome Toigo, and with Richard Shea, a Certified Public Accountant who had handled the tax and accounting work of the company since 1957. She stated to Shea that the will of her deceased son, Harry, provided that his company stock went into a trust for the benefit of his yet unborn children. She expressed concern that her son, Jerome, would not have control of the company and said, "In order to assure Jerome complete control of the corporation . . . I am giving this stock certificate to him." Thereupon she took her stock certificate, representing 900 shares of the corporation and signed the same on the back. Shea then witnessed her signature and Laura Toigo gave the certificate to her son, Jerome. Jerome in turn gave the certificate to Shea who was returning to his office in downtown Chicago, which was near the office

397

of the attorneys who represented the firm. Shea was to deliver the certificate to the attorneys so that the transfer could be made on the corporate record books.

Instead, Shea put the certificate in his office safe and did not deliver it to the attorneys. The stock certificate was given back to Jerome Toigo by Shea in December, 1966, and at the time of these proceedings the certificate was in the possession of Jerome Toigo.

On the night of February 4, 1966, Laura Toigo entered the hospital, never to return. She died February 23, 1966, leaving a will which appointed Richard Shea and her son, Jerome Toigo, as coexecutors of her estate and bequeathed her property "to my lawful descendants living at the time of my death per stirpes and not per capita."

Following the opening of the Estate of Laura Toigo, the attorney representing the coexecutors prepared their inventory. He testified that in preparing the inventory he consulted with certain banks, reviewed his notes and discussed it with Jerome Toigo. He did not, however, discuss the inventory with Shea. On Friday, December 9, 1966, the last day for filing of the inventory, the attorney appeared at the office of Shea and stayed only long enough to obtain Shea's signature. The attorney, himself, testified that he did not remove his coat and stayed only a few minutes. Shea signed the inventory but did not read it. The attorney then proceeded to Aurora and had a brief visit with Jerome Toigo, during which time Jerome Toigo signed the inventory but, again, did not read it. In fact, the inventory was signed under oath by both executors and included, as an asset of Laura Toigo, the 900 shares of stock in the bottling company which are here involved.

On June 14, 1967, the coexecutors filed their motion for leave to amend the inventory by deleting therefrom the 900 shares of stock in the bottling company on the ground that those shares were not an asset of Laura Toigo at the time of her death. The motion also requested the

appointment of a Special Guardian ad Litem and the court granted a portion of the motion by appointing a guardian.

After hearing evidence, the trial court entered an order denying the motion to amend upon the grounds that the motion represented a claim against the Estate of Laura Toigo and was, therefore, barred by statute as a result of the failure to file in apt time, and further, that the coexecutors had not proved by clear and convincing evidence that Laura Toigo made a gift of the stock certificate to her son, Jerome, prior to her death. This appeal followed.

During oral argument, upon inquiry by this Court as to the whereabouts of the certificate of stock in question, we were informed that the certificate was not made a part of the record. Counsel stipulated that if the certificate were present it would disclose (1) that it represented 900 shares of the company stock in Laura Toigo's name, (2) that it was endorsed in blank by Laura Toigo, (3) that no date was entered on the certificate as to the time of the alleged assignment, and (4) that there was no dispute as to the signature of Laura Toigo being witnessed by Shea.

Section 8–309 of the Uniform Commercial Code (Ill Rev Stats 1965, c 26, § 8–309), states:

> "An indorsement of a security whether special or in blank does not constitute a transfer until delivery of the security on which it appears or if the indorsement is on a separate document until delivery of both the document and the security."

█ Shea gave the only direct evidence of what transpired on February 4th when he met with Laura and Jerome Toigo, when he stated that, at that meeting, Laura signed her stock certificate, had it witnessed by him and delivered it to her son, Jerome. At that moment, endorsement and delivery completed the gift and Jerome

■■■■■■

became the owner of the stock. The subsequent location of the certificate itself or the fact that the stock was not transferred on the corporate records, cannot alter that fait accompli.

Our attention is drawn to the case In re Estate of Hill, 42 Ill App2d 396, 192 NE2d 429 (1963). In that case the deceased husband, a Mr. Hill, delivered 2,000 shares of the common stock of Lakefront Realty Corporation to his wife. He did not endorse the stock, as was done in the case at bar, and the stock remained in his name, both on the certificate and on the books of the corporation. The stock certificate, however, was in his wife's possession at the time of his death. The executor brought a citation proceeding to recover the stock, alleging that the deceased husband, and not the wife, was the owner. After much litigation, it was decided by the Appellate Court that the mere delivery of the stock by husband to wife, combined with an expression that the stock was to be the wife's property, was sufficient to constitute a gift. The Court said at page 400 in quoting from a New York case, "Actual delivery of an unendorsed instrument . . . carries with it an implied and irrevocable power of attorney to do the things necessary in completing the transfer, so that difficulties in effecting transfer do not affect the title." The court also said at page 404, "There is no suggestion in this proceeding of any fraudulent practice. Furthermore, from the standpoint of general principles to be followed in all cases, attention and consideration should be given to the position of the donee. It cannot be denied that gifts can be and commonly are made in the manner described here. It is therefore pertinent to inquire how a donee can be expected to offer more in the way of proof than has been presented here." The case before us is much stronger since Laura Toigo actually endorsed the certificate and delivered it to her son, Jerome.

 In addition to the direct testimony of the witness Shea, we have the relationship of mother and son. In Frey v. Wubbena, 26 Ill2d 62, 70–71, 185 NE2d 850 (1962) the Supreme Court said, "There is a presumption that the taking or placing of title by a father in a child is a gift or advancement, and the burden is upon one questioning the gift to overcome the presumption by clear and convincing proof . . . . (Citations omitted.) There is a further presumption of acceptance of a gift beneficial to the donee. (Citations omitted.)" We are not suggesting, of course, that the estate had any burden of proof. Admittedly, the burden of proof was on the petitioner, Jerome Toigo, but, in addition to the direct testimony he presented, he is entitled to the presumption of gift due to his relationship with the donor.

To rebut the testimony of Shea, the Estate introduced testimony of a negative nature that was limited to inference and innuendo. This testimony consisted of conversations that the mother had after the date of the gift and before her expiration wherein no mention of the gift was made. Also noted was the fact that Jerome remained silent about the gift during conferences had with Judith Toigo and legal representatives of the estate of Harry Toigo, at a time when Jerome was negotiating for the purchase of the company stock held in his brother's estate. At no time, prior to the filing of the petition herein, was there a disclosure that a gift of the stock had been made. Based upon this evidence, the Estate argues that a gift had not been made.

 The burden was upon Jerome to show by clear and convincing evidence that a gift of the stock had been made and unless rebutted by sufficient evidence on the part of the Estate, he should prevail. From a review of the evidence, we conclude that Jerome met this burden, that the Estate failed to rebut the same by sufficient evidence and that Laura Toigo did, in fact, make a gift of the stock to her son before her death.

The question then becomes whether or not the motion to amend the inventory constituted a claim against the Estate as contemplated by the statute or was it simply a motion to delete an item mistakenly inventoried.

Section 204 of the Probate Act, in force at the time, (Ill Rev Stats 1965, c 3, § 204) provided, "All claims against the estate of a decedent, except expenses of administration and surviving spouse's or child's award, not filed within 9 months from the issuance of letters testamentary or of administration, are barred as to the estate which has been inventoried within 9 months from the issuance of letters." As noted, Laura Toigo died February 23, 1966. Letters testamentary were issued on March 11, 1966, and the inventory, which included the stock here in question was filed Friday, December 9, 1966, just short of nine months from the issuance of letters. Since the petition to amend was not filed until June, 1967, it is barred if it is a "claim" against the estate. Under the Probate Act, "claim" is defined as follows: " 'Claim' includes any cause of action." (Ill Rev Stats 1965, c 3, § 2(j).)

The Estate directs our attention to two cases containing language which might be thought to support the contention that this motion to amend is a claim within the meaning of the statute.

■ First is the case of In re Estate of Stahl, 305 Ill App 517, 531, 27 NE2d 662 (1940), wherein the argument was made that the decedent had given the claimant certain securities just prior to his death. There was no direct proof of this occurrence and only the claimant sought to testify, but her testimony was barred under section 2 of the Evidence Act (Ill Rev Stats 1965, c 51, § 2). In addition, there was no identification of the securities, so on the facts alone the gift was not proven. However, as an afterthought and by way of pure dicta, since the case had already been decided, the Court said that the petition was barred under the statute limiting claims.

A reading of the case as a whole indicates that this language was not necessary for the decision, since the Court had already held correctly that no gift was proven. Therefore, we view the language as mere dicta and not binding upon us.

The second case is that of Chicago Title & Trust Co. v. Merchants Loan & Trust Co., 244 Ill App 302 (1927). There a creditor-debtor relationship existed wherein one Johnson borrowed certain funds from a man by the name of Grace, giving him in return promissory notes together with certain shares of stock in Johnson's company. The stock was transferred into the name of Grace and the corporate record books in the Johnson company changed so as to show Grace as the shareholder. Subsequently, Johnson made another agreement with Grace wherein it was stipulated that the transfer of the stock was made "in full payment and satisfaction" of Grace's claims against Johnson. Grace died and the stock was inventoried in his estate since it was in his name and the corporate record books of the Johnson company showed him to be the owner of the stock. The Court held that under the facts of that case Grace was, indeed, the owner of the stock at the time of his death. Again in dicta, and following its decision on the merits, the Court held that the petition of Johnson was a claim and barred because it had not been filed in proper time. The Court, in addition at pp 311–312, announced the rule to be that, ". . . where it appears, as here, that stock of a corporation stands in the name of a deceased person and has been inventoried as a part of such person's estate by the executor of his will, any person, claiming title to and ownership of the stock, is barred from enforcing his claim unless the same is presented to the probate court or some other court of competent jurisdiction, within one year after letters testamentary are issued to said executor, under the provision of section 70 of the act concerning administration of estates." It thus appears that there are

three distinguishing features between that case and the case at bar. First, the latter language is mere dicta and was not essential to the decision as the Court had already decided the case before making the statement. Second, a creditor-debtor relationship, without any presumption of gift, existed. Lastly, the rule announced applies to a situation where the stock in question stands in the name and possession of the deceased person. That is not true in the case at bar because, as we have already found, a completed gift had been made to Jerome prior to the death of the decedent. Therefore the stock did not stand in the name of the decedent upon her death and should not have been inventoried as a part of her estate.

If we were to apply the argument made by the Estate that this petition is a claim against the estate and, therefore, barred since not filed within the claim period, it seems to us that absurd results could occur. For example, suppose by mistake an asset which was never owned by the decedent was inventoried in her estate and the claim period passed. No one would say that the mere passage of time, and in this instance a relatively short time, somehow passed title to the decedent, and therefore, the true owner could not have his property back due to the lapse of time. What then is the difference between that situation and the case at bar? If Laura Toigo made a completed gift of her stock before her death, then it became the property of her son, Jerome. The fact that it was included in the inventory of the Estate of Laura Toigo certainly would not pass the title back to her, just as it would not pass title to an asset which she had never owned.

Another example makes this equally apparent. Under the Probate Act the inventory can be filed on the last day and it will bar all claims not filed that precise day or before that time. The true owner of property could not possibly know that his property was included in the in-

404

ventory of another until the inventory was filed and if it were filed on the last possible day, as indeed it was in this case, it would then, for all practical purposes, be too late for the true owner to file a claim and regain his property. It is inconceivable to us that the Legislature intended these absurd results to follow. It is also inconceivable to us that the Legislature intended that the type of proceeding here involved would be a "claim" under the Probate Act.

■ Section 5 of the Probate Act (Ill Rev Stats 1965, c 3, § 5) provides that the provisions of the Civil Practice Act shall apply to probate proceedings and, of course, under the Civil Practice Act a pleading may be amended at any time before or even after judgment to conform to the proofs (Ill Rev Stats 1965, c 110, § 46). The pending petition merely seeks an amendment to delete a certain asset mistakenly inventoried and it is not a claim against the estate.

An examination of the cases supports the foregoing conclusion. In the case of In re Estate of George, 335 Ill App 509, 82 NE2d 365 (1948), the Court was concerned with a petition seeking to reclaim certain chattel property alleged to have been given to the petitioner by the decedent before death. The Estate defended on the grounds that the petition was a claim and barred by the statute. The Court, at page 511, denied that contention and said "The instant claim is not a monetary claim. If allowed it could not be paid. It seeks specific property. The claim is adverse to the claim of title by decedent's personal representative. Plaintiff does not seek *through* the estate but against it." In the case of Oliver v. Crook, 321 Ill App 55, 71, 52 NE2d 453 (1943), the Court said, ". . . plaintiff's claim is not of the character of claims that fall within purview of section 204. Plaintiff's claim does not arise out of an act of the decedent which gave rise to a cause of action during his lifetime,

but it arises out of the act of the administratrix in taking the property of plaintiff. As counsel for plaintiff argues, if the contention of the administratrix were sustained it would mean that if the administratrix took plaintiff's property, thereby enriching the estate, one or two days before the nine months' period expired, plaintiff would thereby be barred from recovering a judgment against the administratrix."

We conclude that this petition is not a claim but simply a petition to amend an incorrect pleading. The petition could not seek to remove the stock from the Estate because the stock was not owned by the decedent at the time of her death.

The case is therefore reversed and remanded to the trial court with instructions to grant the petition and amend the inventory by deleting the certificate of stock in question.

Reversed and remanded with directions.

ABRAHAMSON and SEIDENFELD, JJ., concur.