*In re* ESTATE OF VICTOR J. JULIAN, Deceased (Victoria Julian Fisher *et al.*, Petitioners-Appellants, v. Kenneth A. Julian *et al.*, Respondents-Appellees).

First District (1st Division) No. 1—90—0325

Opinion filed December 16, 1991.—Rehearing denied April 9, 1992.

Piccione, Keeley & Associates, Ltd., of Wheaton, and William J. Harte, Ltd., of Chicago (John J. Piccione, Patrick C. Keeley, Mark W. Tader, and William J. Harte, of counsel), for appellants Victoria Julian Fisher and John Julian.

Torshen, Schoenfield & Spreyer, Ltd., of Chicago (Jerome H. Torshen, Abigail K. Spreyer, and James K. Genden, of counsel), for appellant Gracemarie Julian Soper.

James E. Dahl & Associates, of Chicago (Walter P. Dahl, of counsel), for appellee Kenneth A. Julian.

David A. Novoselsky & Associates, of Chicago (David A. Novoselsky and Linda A. Bryceland, of counsel), for appellee Anthony Rodia.

JUSTICE CAMPBELL delivered the opinion of the court:

Petitioners Victoria Julian Fisher, John A. Julian, Gwendolyn Julian and Gracemarie Julian Soper appeal orders of the circuit court of Cook County dismissing counts I through III of a second amended petition to contest the will of decedent Victor J. Julian. The petition alleged that: (1) respondent Kenneth A. Julian exercised undue influence over Victor; (2) assets listed in the second article of the will are part of the residuary estate; and (3) a corporation known as the Julian Electric Service (Julian Electric) became the property of Kenneth under an agreement between Kenneth and Victor signed in 1986. Respondent Anthony Rodia, the executor of decedent's estate, has filed

a brief in support of affirmance. For the reasons which follow, we affirm the dismissal of count I, reverse the dismissal of counts II and III and remand for further proceedings.

Victor J. Julian died on July 31, 1988. The decedent was survived by five adult children: Victoria Julian Fisher, Gracemarie Julian Soper, John A. Julian, Gwendolyn Julian and Kenneth A. Julian. On September 2, 1988, a document dated May 13, 1988, was admitted to the probate division of the circuit court of Cook County as the decedent's last will and testament. The first three articles of that document provide as follows:

"*FIRST*: I order and direct my Executor, hereinafter named, to pay all my just debts, funeral expenses, charges and costs of administering my Estate.

*SECOND*: All the rest, residue and remainder of the property, real, personal or mixed, of whatsoever character and wheresoever situated, of which I may die seized or possessed of, or which I may own or have any interest in at the time of death, I give, devise and bequeath as follows:

To my son, KENNETH A. JULIAN: My business known as Julian Electric Service and Engineering Inc., an Illinois Corporation, and operating presently at 701 Blackhawk Drive—Westmont, Illinois, and 10 North Beach Street—La Grange, Illinois, which includes all assets, inventories, cash, but not limited to this and my Real Estate now housing Julian Electric Service and Engineering, Inc., and located at 701 Blackhawk Drive—Westmont, Illinois, and 10 North Beach Street—La Grange, Illinois.

To my grandchildren whose names are stated below: Each $25,000. in cash: MICHAEL KOVANDA, JAMES KOVANDA, GREGORY KOVANDA, MICHELLE KOVANDA, VICTORIA JULIAN, JOHN JULIAN, KENNETH JULIAN, ANTHONY JULIAN, SHERI JULIAN, CHRISTOPHER JULIAN, CELESTE FISHER, JOANN FISHER, JULIE ANN FISHER, GREGORY FISHER AND JENNIFER SQUIRE.

To my friend and companion, BERNICE REESE, the following:

1) My real estate and all furnishings and personal property therein located at 14511 Carrolton Road—Rockville, Maryland for as long as she lives and with full and absolute control during her lifetime. Upon her death, the real estate shall be given equally to the following: To my son, JOHN JULIAN, to my

daughter, GRACE MARIE SOPER, to my daughter, VICTORIA FISHER, to my daughter, GWENDOLYN JULIAN.

2) The entire remaining balance of a Bank Account at the Sandy Springs Savings National Bank in Rockville, Maryland.

3) My Condominium, and all furnishings and personal property therein, located at 915 Ocean Shore Boulevard, Ormand Beach, Florida for as long as she lives and with full and absolute control during her lifetime. Upon her death, the real estate shall be given equally to the following: To my son, JOHN JULIAN, to my daughter, GRACE MARIE SOPER, to my daughter, VICTORIA FISHER, to my daughter, GWENDOLYN JULIAN.

*THIRD*: All the rest, residue and remainder of the property, real, personal or mixed, of whatsoever character and wheresoever situated, of which I may die seized or possessed of, or which I may own or have any interest in at the time of death, I give, devise and bequeath as follows: To my son, JOHN JULIAN—to my daughter, GRACE MARIE SOPER—to my daughter, VICTORIA FISHER—to my daughter, GWENDOLYN JULIAN."

On September 27, 1988, petitioners filed their petition to contest the will, alleging that the will was the result of undue influence exercised upon the decedent by his son, respondent Kenneth. In turn, Kenneth moved to strike certain paragraphs of the petition and for summary judgment; the motion to strike was denied and there was no resolution of the motion for summary judgment.

On February 24, 1989, petitioners filed an amended petition to contest the will and for a construction of the will. Count I of the amended petition realleged undue influence, adding allegations concerning the existence of a fiduciary relationship between the decedent and Kenneth. Count II alleged that both articles second and third created residuary estates which would bear the burden of estate administration costs under Illinois law. Count III alleged that title to the Julian Electric Service had passed to Kenneth under the terms of a document dated October 16, 1986, signed by the decedent and Kenneth and were therefore nonprobate assets subject to estate taxes and administration costs under the doctrine of "equitable apportionment."

The document referred to in count III states that decedent, the sole shareholder of Julian Electric, Inc., transferred, assigned and sold all the shares of the company to Kenneth in return for Kenneth's promise to devote his time and efforts to the company and to refrain

374

from obtaining an interest in any competitor. The document also provided that voting rights would remain with decedent until his death, but that dividends would be split equally between decedent and Kenneth. The document further provided that if the shares could not be so transferred, decedent would hold the shares in trust for Kenneth for the life of decedent.

On May 23, 1989, respondent Rodia filed an answer to the amended petition. In this answer, respondent Rodia, as executor, stated that he interpreted article second as containing specific devises outside the residuary estate. Rodia also denied any fiduciary relationship between Kenneth and the decedent. Finally, Rodia stated that he drafted the 1986 agreement, but denied knowledge of whether Kenneth and the decedent entered into that agreement.

Kenneth moved to dismiss the amended petition. Kenneth argued that: count I failed to allege specific facts which would support a claim for undue influence; count II failed because article second of the will contained specific devises and was therefore not a residuary clause; and count III failed because the shares of stock in the Julian Electric in question had never been transferred to Kenneth, had been included in the inventory of the estate and therefore passed under the terms of the will and were probate assets. The trial court granted the motion to dismiss as to count I on July 15, 1989, but granted petitioners leave to file an amended count I.

Petitioners filed a second amended petition on August 8, 1989. Counts II and III of this petition were identical to those in the first amended petition.

Amended count I alleged that Kenneth, as decedent's son and the primary manager of Julian Electric Service, stood in a fiduciary relationship of trust and confidence with decedent. Count I then alleged that during the three-year period before his death, decedent was unable to operate Julian Electric due to advanced age as well as impaired health and memory. Consequently, it was alleged that Kenneth's management of the business was indispensable to its continued profitability. Julian Electric was alleged to be decedent's main source of income; thus, decedent was alleged to be dependent on Kenneth's management of the business. During this period, Kenneth was allegedly decedent's main source of social and intellectual outlet, particularly following the death of decedent's wife in 1986. Count I further alleged that Kenneth overcame decedent's free will through repeated threats and demands that unless decedent gave Kenneth control over the business and assured that Kenneth would retain control by transferring ownership of the business to Kenneth by contract

or will, Kenneth would terminate his own employment at Julian Electric. Count I alleged that these threats and demands caused decedent to draft both a May 10, 1986, will and the contested May 13, 1988, will. Finally, count I alleged that Kenneth was a substantial and disproportionate beneficiary of the 1988 will.

On September 5, 1989, respondent Rodia moved to dismiss count I of the second amended petition. Kenneth later filed a motion to dismiss the petition in its entirety. On September 15, 1989, the trial court granted the motions to dismiss as to count I only. Petitioners attempted to appeal this order, but the appeal was dismissed without prejudice by this court as the order was not final and appealable.

On December 18, 1989, the trial court heard argument on the motion to dismiss counts II and III. At the conclusion of that hearing the trial court denied the pending motions for summary judgment on count III and judgment on the pleadings on count II, but granted the motion to dismiss counts II and III. The report of proceedings indicates that the trial court dismissed count II by determining that the "four corners" of the document indicated that article second was not a residuary clause. The report of proceedings does not indicate the trial court's rationale for dismissing count III. On January 10, 1990, the trial court entered an order making the dismissal of counts II and III final and appealable under Illinois Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)). Petitioners timely filed their notices of appeal as to counts II and III. On March 28, 1990, the trial court granted Kenneth's motion to enter a Rule 304(a) finding as to the dismissal of count I. On May 21, 1990, this court permitted Victoria Julian Fisher and John A. Julian to amend their notice of appeal to include the dismissal of count I, pursuant to Rule 303(e) (134 Ill. 2d R. 303(e)).

Initially, we note that this appeal challenges the dismissal of a petition for failure to state a claim. The Illinois Code of Civil Procedure applies to a will contest (Ill. Rev. Stat. 1989, ch. 110½, par. 1—6); therefore, the rules governing the review of a dismissal under section 2—615 of the Code (Ill. Rev. Stat. 1989, ch. 110, par. 2—615) apply to this appeal.

A trial court should dismiss a cause of action on the pleadings only if it is clearly apparent that no set of facts can be proven which will entitle a plaintiff to recover. (*Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 504, 565 N.E.2d 654, 657.) On appeal, all well-pleaded facts in the attacked portions of the complaint are taken as true and this court must decide whether the allegations, when viewed in the light most favorable to the plaintiff, are sufficient

to state a cause of action upon which relief may be granted. *Burdinie*, 139 Ill. 2d at 505, 565 N.E.2d at 657.

## I

 Petitioners first challenge the dismissal of count I, which alleged that the decedent's will was the product of undue influence exercised by respondent Kenneth. Undue influence sufficient to invalidate a will is that influence which prevents the testator from exercising his own free will in the disposition of his estate or which deprives the testator of free agency and renders the will more that of another than his own. The influence may be exerted at any time, but must be directly connected with the execution of the will and operate at the time the will is made. (*In re Estate of Sutera* (1990), 199 Ill. App. 3d 531, 536, 557 N.E.2d 371, 374 (and cases cited therein).) The *prima facie* elements of undue influence are: (1) a fiduciary relationship between the testator and a substantial and comparatively disproportionate beneficiary under the will; (2) a testator in a dependent situation in which the substantial and disproportionate beneficiaries are in dominant roles; (3) a testator who reposed trust and confidence in such beneficiaries; and (4) a will prepared or procured and executed in circumstances wherein such beneficiaries were instrumental or participated. (See *In re Estate of Mooney* (1983), 117 Ill. App. 3d 993, 997, 453 N.E.2d 1158, 1161.) Furthermore, the pleading of undue influence must contain a specific recital of the manner in which the free will of the testator was impaired at the time the instrument was executed. The mere conclusion that the testator was influenced by the dominant nature of the disproportionate beneficiary is insufficient. *Merrick v. Continental Illinois National Bank & Trust Co.* (1973), 10 Ill. App. 3d 104, 111, 293 N.E.2d 767, 771, quoting *Sterling v. Kramer* (1957), 15 Ill. App. 2d 230, 234, 145 N.E.2d 757, 759.

In this case, the parties primarily contest the existence of a fiduciary relationship and the preparation and procurement of the will. As the court did not err in dismissing count I on the latter ground, we need not address the former.

Count I of the petition was properly dismissed on the issue of whether the will was procured and executed under circumstances which would give rise to a claim of undue influence. For example, in *Sutera*, this court held that allegations of a testator's declining health, dominant influence exercised by a beneficiary and a threat by that beneficiary to expose the testator's sexual preferences did not suffice to state a claim of undue influence. (*Sutera*, 199 Ill. App. 3d at 538, 557 N.E.2d at 375-76.) The *Sutera* court then noted:

"In their brief, petitioners contend that 'the testator is alleged to have executed his will under the fear that respondent's threat would be carried out.' While such an allegation comes closer to those allegations sufficient to state a cause of action for undue influence, unfortunately the petition did not, in fact, contain such a statement." *Sutera*, 199 Ill. App. 3d at 539, 557 N.E.2d at 376.

■ In this case, the petition comes closer to specifically alleging the manner in which the alleged influence operated to overcome the free will of the testator. It is notable, however, that the *Sutera* court did not conclude that such allegations actually suffice to state a claim. Indeed, the *Sutera* court, in distinguishing the *Sterling* case, noted that in *Sterling*, the petition included allegations of a conspiracy by one beneficiary and his wife to misrepresent facts about other beneficiaries. (*Sutera*, 199 Ill. App. 3d at 538, 557 N.E.2d at 375.) In this case, as in *Sutera*, there are no such allegations of misrepresentation. Moreover, there are no allegations that the respondent directly participated in the procurement or execution of the will. Consequently, count I fails to allege undue influence with the specificity required to survive a motion to dismiss.

## II

Petitioners next challenge the dismissal of the second count of the petition, which sought a construction of the will that both articles second and third are residuary clauses which would be subject to taxes and estate administration costs under the "burden on the residue" rule followed in Illinois. (See *In re Estate of Maddux* (1981), 93 Ill. App. 3d 435, 437, 417 N.E.2d 266, 268.) Illinois lawyers have long relied on this rule and "countless wills have been drafted on this assumption." *In re Estate of Phillips* (1971), 1 Ill. App. 3d 813, 815, 275 N.E.2d 685, 687.

■ In construing a will, a court will normally give technical terms their technical meaning and will seek to effectuate the testator's intent. (See *In re Estate of Laas* (1985), 134 Ill. App. 3d 504, 507, 480 N.E.2d 1183, 1186.) A court will normally accord a word which appears in more than one place in a will an identical meaning. (*Heller v. Metcalf* (1981), 98 Ill. App. 3d 76, 78, 424 N.E.2d 87, 89.) The construction of a will should seek to give effect to all the language of the testator's will. (*In re Estate of Powers* (1983), 117 Ill. App. 3d 1087, 1089, 454 N.E.2d 384, 386.) Where the language of a will is ambiguous, the court will apply the rules of construction to ascertain the testator's presumed intent. When applying the rules of

construction, a court may insert or delete words in order to arrive at that intent. *Chicago Title & Trust Co. v. Schwartz* (1983), 120 Ill. App. 3d 324, 329, 458 N.E.2d 151, 154.

In this appeal, petitioners rely primarily on two cases. In *In re Estate of Georgen* (1971), 2 Ill. App. 3d 750, 277 N.E.2d 341, this court held that two separate clauses of a will created a residuary estate which served to place real estate with a trustee instead of the testator's husband. In *Molner v. Silbert* (1956), 8 Ill. App. 2d 388, 132 N.E.2d 36, this court held that two residuary clauses were subject to taxes and costs where one residuary clause contained specific bequests and other distributions, where the will allowed the trustee to defer such distributions if needed to pay such expenses.

In contrast, respondents rely upon the aforementioned rule that this court must seek to effectuate the testator's intent. Respondents note that article second contains a number of specific bequests and distributions and the will contains no other specific devises. The conclusion respondent draws is that the four corners of the will evince an intent such that article second is not a residuary clause.

Respondents' conclusion does not necessarily follow from their argument. *Georgen* and *Molner* imply that language which creates a residuary estate is not overcome by the fact that the clause goes on to make specific bequests or distributions; moreover, this court expressly stated that a residuary bequest may be specific in *In re Estate of Comiskey* (1960), 24 Ill. App. 2d 199, 204, 164 N.E.2d 535, 538. Respondents have failed to cite any binding authority contradicting *Comiskey*.

Respondents also rely on *In re Estate of Appel* (1973), 13 Ill. App. 3d 546, 300 N.E.2d 845, in which the term "residuary estate" appeared four times. The *Appel* court concluded that there was only one residuary clause, based on the language of that will. For example, article V of the *Appel* will stated that "[i]f my residuary estate shall contain" shares of stock in a company, it would go to two specific beneficiaries equally. (*Appel*, 13 Ill. App. 3d at 547, 300 N.E.2d at 846.) The *Appel* court stated that this conditional phrase operated to identify the asset, rather than apportion taxes and costs. (*Appel*, 13 Ill. App. 3d at 549, 300 N.E.2d at 847.) Thus, *Appel* is distinguishable from this case because the term "residuary estate" appeared in different contexts within the will. In contrast, the language here is identical in both articles second and third.

■ In sum, considering the identical language in articles second and third, as well as the rules that a court is to give effect to all the language in the will and give that language its technical meaning un-

less the testator manifested a contrary intent, it is possible that both articles were intended as residuary clauses. Despite this ambiguity, the trial court dismissed count II without hearing evidence of the testator's intent; judgment on the pleadings was denied. Given the procedural posture of this appeal, we conclude that count II should not have been dismissed.

## III

Finally, petitioners challenge the dismissal of count III of the petition, which sought a construction of the will which declared Julian Electric a nonprobate asset. Petitioners claim that title to Julian Electric passed under the 1986 agreement between respondent Kenneth and the decedent, rather than under the will. Whether the business is deemed a nonprobate asset is important because nonprobate assets are subject to taxation under the doctrine of equitable apportionment.

■■ Although Illinois does not have an equitable apportionment statute, our courts have consistently applied the doctrine of equitable apportionment to intestate and testate estates, thereby permitting the apportionment of Federal estate taxes among recipients of probate and nonprobate assets. (*In re Estate of Gowling* (1980), 82 Ill. 2d 15, 411 N.E.2d 266; *Roe v. Estate of Farrell* (1978), 69 Ill. 2d 525, 372 N.E.2d 662.) Equitable apportionment will not be allowed, however, as to nonprobate assets where the testator or legislature has expressed a contrary intention. *In re Estate of Grant* (1980), 83 Ill. 2d 379, 415 N.E.2d 416.

Petitioners did not specify a particular theory in count III which would result in the equitable apportionment they seek, at least not in the sense of employing specific technical buzzwords or legalese. However, we are cognizant that the petition as a whole is a petition for will construction. The petition alleges that title to Julian Electric passed under the 1986 agreement, which would preclude it from passing under the will. These allegations include the terms of the 1986 agreement itself; the agreement was incorporated into their petition by attaching it as an exhibit.

■■ These allegations, with or without accompanying legalese, state a claim for will construction based on a latent ambiguity in the will. In determining the propriety of the trial court's dismissal of the petition, this court's task would be to determine whether the factual allegations of the petition to construe the will set forth facts which, if proved, would create a latent ambiguity in the will. (*In re Estate of Smith* (1990), 198 Ill. App. 3d 400, 555 N.E.2d 1111.) If the petition states such facts, a hearing must be held in which evidence extrinsic

to the will is taken to determine if there is a latent ambiguity. If it is determined that no latent ambiguity exists, the petition is dismissed; otherwise, a full hearing is held in which evidence extrinsic to the will is admitted to determine the intent of the testator. (*Weir v. Leafgreen* (1962), 26 Ill. 2d 406, 186 N.E.2d 293.) This rule has been applied where legacies are in clear and unambiguous terms but the testator did not own the property described in the bequest. *Huff v. State Bank & Trust Co.* (1953), 414 Ill. 111, 110 N.E.2d 449; *Appleton v. Rea* (1945), 389 Ill. 222, 58 N.E.2d 854; *Alford v. Bennett* (1917), 279 Ill. 375, 117 N.E. 89.

■ In this case, petitioners allege that decedent did not own Julian Electric at the time of his death. Thus, under *Huff*, it seems that the trial court erred in dismissing count III without a hearing on whether a latent ambiguity exists in the will.

Respondents raise a number of arguments in support of the dismissal of count III. They first argue that decedent's will specifically provides for the transfer of Julian Electric and, consequently, the trial court "cannot be said to have erred in failing to 'construe' the language of a document to exclude that which is plainly included within it by the most explicit possible terms." Respondents, however, cite no authority for this proposition, which is contrary to the *Huff* line of cases.

Respondents note that in the motion to dismiss, Kenneth asked the trial court to take judicial notice of the fact that the shares of Julian Electric stock were never physically transferred to Kenneth. The executor states that Kenneth has never claimed ownership of the stock or paid gift taxes on the stock. Thus, respondent Rodia concludes that "there is no basis in fact to find that decedent ever transferred the stock to Kenneth during his lifetime" and respondent Kenneth concludes that count III "cannot make Kenneth A. Julian the owner of assets he does not possess and which he has not claimed."

The argument is unpersuasive, for it relies on factual matters outside the petition which cannot be considered upon hearing a motion to dismiss for failure to state a claim.

Respondents also note that the executor has included the Julian Electric shares in the inventory of the estate and that petitioners did not object to the inventory when it was filed. The filing of an inventory with the court, however, is merely a "preliminary investigation to determine probabilities, and not ultimate rights," and the property inventoried is brought before the court "so that an adjudication in the

interest of the estate on such property may be had." (*Simms v. Guess* (1894), 52 Ill. App. 543, 546.)

> "For example, suppose by mistake an asset which was never owned by the decedent was inventoried in her estate and the claim period passed. No one would say that the mere passage of time, and in this instance a relatively short time, somehow passed title to the decedent, and therefore, the true owner could not have his property back due to the lapse of time." (*In re Estate of Toigo* (1969), 107 Ill. App. 2d 395, 404, 246 N.E.2d 68, 73.)

Thus, whether petitioners objected to the inclusion of the business in the inventory under the provisions of the Probate Act cited by respondents is not determinative of whether petitioners may ask the trial court to examine whether the existence of the 1986 agreement creates a latent ambiguity in decedent's will.

Respondents finally contend that petitioners cannot enforce the 1986 agreement because petitioners were not parties to the contract and are not in privity to either decedent or Kenneth. This argument is supported by legal authority. (See, *e.g., White Hen Pantry, Inc. v. Rak Woo Cha* (1991), 214 Ill. App. 3d 627, 574 N.E.2d 104.) This argument is also premised on respondents' assertions that the contract has not been executed. As these assertions are not contained in count III, they cannot affect the outcome of the motion to dismiss.

In sum, given the allegations in count III of the petition, we conclude that count III alleges facts which could give rise to a latent ambiguity in the will. Thus, count III should not have been dismissed for failure to state a claim.

For all of the above reasons, we affirm the dismissal of count I, but reverse and remand the dismissal of counts II and III for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

MANNING, P.J., and O'CONNOR, J., concur.