RUTH HOPPER, Petitioner-Appellee, v. JAMES O. BEAVERS, as Ex'r of the Estate of Frederick Conger Hopper, Deceased, and as Trustee of the Trusts Created Under Articles VI and VII of the Will of Frederick Conger Hopper, *et al.*, Respondents-Appellees (Dominic John Basta, Jr., *et al.*, Respondents-Appellants).

Fifth District   No. 5—04—0341

Opinion filed November 9, 2005.

914

James C. Schroeder and Howard M. McCue III, both of Mayer, Brown, Rowe & Maw, L.L.P., of Chicago, for appellants.

Alan S. Rutkoff, P.C., and Ryan M. Hardin, both of McDermott, Will & Emery, L.L.P., of Chicago, for appellees Austin W. Hopper and David W. Hopper.

JUSTICE HOPKINS delivered the opinion of the court:

This case involves the construction of the "Last Will and Testament" (Will) of Frederick C. Hopper (testator). The petitioner, Ruth Hopper, the testator's widow and third wife (widow), brought this petition to determine the source of her one-third statutory share following the renunciation of the Will pursuant to section 2—8 of the Probate Act of 1975 (Act) (755 ILCS 5/2—8 (West 2004)). The circuit court held that the widow's one-third statutory share is payable entirely from the residue of the testamentary estate and that article VII of the Will is the "true" residue. The beneficiaries of article VII are the testator's four stepchildren, respondents Dominic John Basta, Jr., Christopher David Basta, Lisa Franchesca Basta, and Matthew Joseph Basta (Basta stepchildren), who had been born to the testator's second wife, Judith Basta Hopper, whom he divorced in 1991 after 10 years of marriage. The circuit court's ruling increases the share of the estate to which the testator's natural children, from his first marriage, respondents Austin Wiggins Hopper and David William Hopper (Hopper children), are entitled. The Basta stepchildren filed a timely notice of appeal. We affirm.

## FACTS

In 1967, the testator married his first wife, respondent Jane G. Hopper. The Hopper children were born during the marriage. The testator and his first wife divorced in 1977. In 1981, the testator married his second wife, Judith. Prior to the marriage, the testator and his second wife signed an antenuptial agreement. The testator and his second wife had no children together, but at the time of their marriage, his second wife had four children, the Basta stepchildren, from a previous marriage. The testator and his second wife divorced in 1991. In 1993, the testator married his third wife, Ruth. The testator and his third wife had no children together, and they were still married when the testator died on May 11, 2000.

Even though the testator was a lawyer, he had another lawyer draft the Will. The testator signed the Will in 1985 while he was married to his second wife. He never amended or revoked the Will after his divorce from his second wife, and he never executed another will. The testator's Will contains 12 articles. The relevant portions are as follows.

Article I directs that all the expenses for the funeral, burial, and administration and settlement of the estate and all debts, taxes, liens,

penalties, and interest charges be paid from the residue of the testamentary estate. Article II bequeaths the testator's personal property to his second wife or, if she predeceases the testator, to the Hopper children and Basta stepchildren. Article III gives the testator's stock in FCH, Inc., to his second wife "provided she is living" at the time of his death. Article IV gives $50,000 to each of the Hopper children and the Basta stepchildren. Article V bequeaths 10% of the "balance of the residue" of the testamentary estate "remaining after final determination and satisfaction of the requirements of [a]rticles I through IV" to respondent Bertrand Hopper Memorial Foundation. Article VI specifies that 45% of the "balance of the residue" of the testamentary estate be placed into a trust for the benefit of his first wife, to satisfy his legal obligations pursuant to the divorce decree, and that the trust remainder interest be given to the Hopper children. Article VII bequeaths "all of the rest and residue of [the testator's] testamentary estate, including lapsed legacies, bequests[,] and devises and all properties with respect to which [he possesses] a power of appointment" to a separate trust for the benefit of his second wife and the Basta stepchildren. Article VIII directs the executor, during the administration of the estate and until the trust is established, to pay to his first wife the required alimony payments and to his second wife 125% of the amounts paid to his first wife. Article IX directs that all amounts payable pursuant to the Will be paid within 18 months of the testator's death. Article X states that the bequests to his second wife were made with full knowledge of the 1981 antenuptial agreement that she and the testator signed. Article XI states that anyone attempting to contest any part of the Will shall be "disinherited and disqualified to receive" any portion of the testator's estate. Article XII names the executor of the Will.

The testator's Will was admitted to probate shortly after his death. Pursuant to section 2—8 of the Act (755 ILCS 5/2—8 (West 2004)), the widow exercised her statutory right to renounce the Will and became entitled to one-third of the testator's estate. See 755 ILCS 5/2—8(a) (West 2004).

On April 28, 2004, the circuit court determined that although articles V, VI, and VII provided for distribution of the "residue," the trust created by article VII was the "true" residue of the estate. Consequently, the widow's one-third share was payable entirely from the article VII trust. The court also determined that the FCH, Inc., stock should be added to article VII, the "true" residue of the estate, because section 4—7 of the Act (755 ILCS 5/4—7 (West 2004)) states that if a will is executed during a marriage and the marriage subsequently ends in a divorce, the will takes effect as if the spouse

had predeceased the testator. The circuit court determined that because the testator did not name a contingent beneficiary for article III, the article lapsed, and the property was added to article VII, the "true" residuary clause.

The circuit court ordered the executor to recalculate the amounts due to the beneficiaries based on the foregoing ruling. The executor determined that the gross estate was $31,990,259 and that the net estate was $17,444,607. The widow's one-third renunciation share was $5,814,869, or one-third of $17,444,607. The executor determined the distribution, in relevant part, as follows:

| | |
|---|---|
| 45% in trust for the Hopper children plus the claim for alimony | $8,269,954 |
| 45% to the Basta stepchildren | $8,269,954 |
| Plus lapsed bequest of stock | $ 55,000 |
| Less Ruth's one-third renunciation share | $5,814,869 |
| Net share to the Basta stepchildren | $2,510,597. |

The Basta stepchildren appeal.

## ANALYSIS

On appeal, the Basta stepchildren initially contend that because the word "residue" is used in articles V, VI, and VII, the Will contains multiple residuary clauses and the widow's renunciation share should be paid equally from each of the foregoing articles rather than from article VII alone. We disagree.

■ Construing a will without resort to extrinsic evidence is a question of law, which this court reviews *de novo*. *Gridley v. Gridley*, 399 Ill. 215, 221-29 (1948). When construing a will, a court must give effect to the testator's intent based on all of the words used in the will. *Feder v. Luster*, 54 Ill. 2d 6, 10-11 (1973). While the language of the will is the best proof of the testator's intent, when a latent ambiguity exists, evidence extrinsic to the will, such as the circumstances under which the instrument was drafted and the state of the testator's property and his family, may be utilized. *Cain v. Finnie*, 337 Ill. App. 3d 318, 320 (2003).

Articles V, VI, and VII each contain the term "residue." Article V bequeaths 10% of the "balance of the *residue*" (emphasis added) of the testamentary estate "remaining after final determination and satisfaction of the requirements of [a]rticles I through IV" to the Bertrand Hopper Memorial Foundation. Article VI specifies that 45% of the "balance of the *residue*" (emphasis added) of the testamentary estate be placed into a trust for the benefit of his first wife, to satisfy

his legal obligations pursuant to a divorce decree, and that the trust remainder interest be given to the Hopper children. Article VII bequeaths *"all of the rest and residue* of [the testator's] testamentary estate, including lapsed legacies, bequests[,] and devises and all properties with respect to which [he possesses] a power of appointment" (emphasis added) to a separate trust for the benefit of his second wife and the Basta stepchildren. Hence, a review of articles V, VI, and VII demonstrates significant differences.

Article V grants a precise percentage of whatever remains after implementation of the first four articles. Article VI refers to the residue in a similar manner as article V. Article VII clearly grants everything else that is left over by using the language "all of the rest." See *Bergheger v. Boyle*, 258 Ill. App. 3d 413, 418 (1994) ("residue" means the probate estate remaining after charges, debts, and particular legacies); *Molner v. Silbert*, 8 Ill. App. 2d 388, 394 (1956) ("rest and residue" mean the estate remaining after the payment of charges, debts, and particular legacies).

The Basta stepchildren argue that the Will has multiple residuary clauses. In support of their argument, they cite *In re Estate of Georgen*, 2 Ill. App. 3d 750, 755-56 (1971), and *In re Estate of Julian*, 227 Ill. App. 3d 369, 372-73, 379 (1991).

In *In re Estate of Georgen*, 2 Ill. App. 3d at 753, the will contained one article that disposed of " 'all the rest of [the testator's] personal property and all of [the testator's] real estate' " and another article that used the terms " 'all the rest, residue[,] and remainder of [the testator's] estate.' " The *In re Estate of Georgen* court determined that both of the aforementioned articles were residuary dispositions. The court noted that even though the classic term "residue" was not found in the first article, the language "all the rest" did appear and certainly implied an intended residuary clause. The court pointed out that "all the rest" is classic residuary language. In *In re Estate of Julian*, 227 Ill. App. 3d at 378-79, the court determined that because two articles contained identical language referring to the "residue," it was possible that the testator intended for both articles to be residuary clauses.

Although we agree that a will may have multiple residuary clauses, *In re Estate of Georgen* and *In re Estate of Julian* are distinguishable from the instant case. In *In re Estate of Georgen*, the will stated "all the rest" in two separate paragraphs. In the instant case, the Will only states "all of the rest" in article VII. Additionally, the Will in the instant case does not refer to the residue in two separate articles in precisely the same manner. *Cf. In re Estate of Julian*, 227 Ill. App. 3d at 378-79.

■ The case at hand is similar to *Greene v. United States*, 447 F. Supp. 885 (N.D. Ill. 1978) (construing Illinois law). In *Greene*, the testator gave 10% of his residuary estate to a charitable foundation. *Greene*, 447 F. Supp. at 896. In the next article of the will, the testator gave " 'one-half of all of the rest, residue[,] and remainder' " of the estate to his spouse. *Greene*, 447 F. Supp. at 896. In a third article, he made a gift to a trust of " 'the entire remainder of [his] estate (hereinafter referred to as the "Residuary Estate").' " *Greene*, 447 F. Supp. at 896. The *Greene* court determined that the last provision, the one disposing of the "entire remainder," was the "true residue" of the estate. The *Greene* court noted that this concept has been accepted in Illinois and described it as follows:

> " 'When the residue of an estate is disposed of in parts or fractions, it is frequently necessary to determine whether the testator intends the respective parts or fractions to constitute subdivisions of the entire residue, or to constitute preliminary and ultimate residues with the final part representing the "true" residue or, as it is sometimes called, the "residue of the residue."
>
> An illustration of a share disposed of as a subdivision of the entire residue is one which divides the residue into two parts, with one part being given half to A and half to B, and the other part being given half to C and half to D. A typical case of a "true" residue is one in which the testator[,] in disposing of his residuary estate, carves therefrom portions of the residue and disposes of those portions to designated persons or users and then passes *that which remains* to others. In such case the "true" residue is the final portion.
>
> In general, the test of whether a share or part is a subdivision of the entire residue, or constitutes one of several residues with the final division being the "true" or ultimate residue, turns on the language used by the testator in describing the final portion. If he gives "whatever remains" or "the balance after making particular gifts," or other terminology indicative of an intent that the final division is a "catchall" for what may not have been disposed of by prior gifts, the disposition will normally be construed as one of preliminary and ultimate residues.'
>
> 1 James, [Illinois Probate Law and Practice], at 43.51a (1975 Supp. by Austin Fleming) (emphasis in original; citations omitted)."

*Greene*, 447 F. Supp. at 897.

■ This is precisely what occurred in the instant case. A review of article VII demonstrates that the testator intended to dispose of "all of the rest and residue" of his estate, or the balance that was left over, *after* his earlier bequests. The words chosen in article VII demonstrate that the testator knew that there was no assurance of what the Basta

stepchildren would receive either in amount or in comparison to the article VI trust for the Hopper children. Hence, the final language in article VII demonstrates that it is the "true residue" of the testator's estate.

The Basta stepchildren claim that the foregoing construction of the Will cannot be correct because the testator intended to treat them "essentially the same" as his own children. We disagree.

Even construing the Will in a light most favorable to the Basta stepchildren, it is clear that the testator did not intend to treat them "essentially the same" as the Hopper children. If the testator had wanted to treat the Basta stepchildren the same as the Hopper children, he would have done so instead of having the Basta stepchildren's inheritance dependent upon other contingencies. In fact, when the testator wanted the Basta stepchildren to inherit the same as the Hopper children, he made that clear. For example, article IV provides a $50,000 legacy for each of the Hopper children and each of the Basta stepchildren. In contrast, articles VI and VII are materially different from each other. In article VI, the testator specifically identifies 45% of the "balance of the residue" to the Hopper children as opposed to article VII, which gives "*all of the rest* and residue" (emphasis added) to the Basta stepchildren. No percentage of the estate is specified for the Basta stepchildren. Additionally, the testator made clear that he intended for each of the Hopper children to receive at least twice as much as each of the Basta stepchildren because there are only two Hopper children as opposed to four Basta stepchildren. Hence, he never intended to treat the Basta stepchildren "essentially the same" as the Hopper children.

Alternatively, the Basta stepchildren argue that section 2—8(d) of the Act (755 ILCS 5/2—8(d) (West 2004)) requires that the widow's one-third renunciation share be paid proportionately out of articles V, VI, and VII. We disagree.

It is necessary to examine the statutory history of the spouse's renunciation share to understand why that share must come from article VII, the "true" residuary clause of the Will.

In 1903, section 79 of "An Act in regard to the administration of estates" provided:

> "In all cases where a widow or surviving husband shall renounce all benefit under the will, and the legacies and bequests therein contained, to other persons, shall, in consequence thereof, become diminished or increased in amount, quantity[,] or value, it shall be the duty of the court, upon settlement of such estate, to abate from or add to such legacies and bequests in such manner as to equalize the loss sustained or advantage derived thereby, in a corresponding

ratio to the several amounts of such legacies and bequests, according to the amount or intrinsic value of each." Ill. Rev. Stat. 1903, ch. 3, par. 78.

Section 79 was in substantially the same form as early as 1845. See *Lewis v. Sedgwick*, 223 Ill. 213, 222 (1906).

■ The general rule was that a specific legacy is a gift of a specific part of a testator's estate, identified and distinguished from all things of the same kind, and can only be satisfied by the delivery of the particular thing and that if the estate for any reason should turn out to be less than the testator anticipated, or if for any reason there is required an abatement of any of the legacies, general legacies or residuary funds must first be abated before any abatement of the specific legacies could be required. *Lewis*, 223 Ill. at 222. This is so because specific legacies and devises are not in the same class as those that are residuary. *Pace v. Pace*, 271 Ill. 114, 120 (1915). As a general rule, residuary legatees and devisees take what is left, and their legacies and devises abate before specific devises. *Pace*, 271 Ill. at 120-21; *Kincaid v. Moore*, 233 Ill. 584 (1908); *Lewis*, 223 Ill. at 221.

As the *Lewis* court noted:

"It is to be presumed that the legislature had in mind the law requiring general legacies first to be abated before trenching on the funds of the specific legatees. We do not believe it was their intention to make a different rule in the case of renunciation affecting legacies than in other cases where legacies were diminished or increased, but rather to apply the same rule. Such is the construction we give to this statute. Our conclusion in this regard is strengthened by the fact that any other would render the distribution of an estate, where the widow or surviving husband renounces under the provisions of the will, exceedingly difficult and expensive. Such facts should not overthrow any clear statutory provisions[ ] but may assist in learning the intent of the statute when it is not otherwise entirely clear." *Lewis*, 223 Ill. at 222.

In 1939, section 50 of the Probate Act (Ill. Rev. Stat. 1939, ch. 3, par. 202) (the section 79 successor (see *In re Estate of Brinkman*, 26 Ill. App. 3d 780, 783 (1975))) also required the discriminatory abatement of legacies by classes. See *In re Estate of Brinkman*, 26 Ill. App. 3d at 782. Section 50 of the Act stated:

"When a surviving spouse of the testator renounces the will and the legacies to other persons are thereby diminished or increased in value, the probate court, upon settlement of the estate, shall abate from or add to the legacies in such a manner as to equalize proportionately the loss or advantage resulting therefrom." Ill. Rev. Stat. 1939, ch. 3, par. 202.

In 1965, section 50 of the Act (Ill. Rev. Stat. 1965, ch. 3, par. 50) was changed very slightly to state:

"When a surviving spouse of the testator renounces the will and the legacies or devises to other persons are thereby diminished or increased in value, the court, upon settlement of the estate, shall abate from or add to the legacies or devises in such a manner as to apportion the loss or advantage among the legatees and devisees in proportion to the amount and value of their legacies and devises."

Currently, section 2—8(d) of the Act (755 ILCS 5/2—8(d) (West 2004)) states:

"If a surviving spouse of the testator renounces the will and the legacies to other persons are thereby diminished or increased in value, the court, upon settlement of the estate, shall abate from or add to the legacies in such a manner as to apportion the loss or advantage among the legatees in proportion to the amount and value of their legacies."

The Basta stepchildren argue that the changes in the foregoing statutes confirm that any loss or advantage due to the spouse's renunciation must be apportioned among the devisees and legatees without distinction for class or kind. We disagree.

■ The Basta stepchildren did not cite or discuss *In re Estate of Brinkman*, 26 Ill. App. 3d 780, a case involving the interpretation of section 50, as amended in 1965, which is substantially in the same form as the current section 2—8(d) of the Act (755 ILCS 5/2—8(d) (West 2004)). The issue on appeal in *In re Estate of Brinkman* was basically the same as the one in the present case: whether the 1965 amendment of section 50 of the Act (Ill. Rev. Stat. 1965, ch. 3, par. 50) changed the discriminatory abatement rule to a nondiscriminatory abatement rule that favors residuary legatees. The residuary legatees in *In re Estate of Brinkman* made the same argument as the Basta stepchildren in the instant case: that every amendment to a statute is presumed to intend a change in the existing law and that the amendment of section 50 of the Act (Ill. Rev. Stat. 1965, ch. 3, par. 50) reflected the General Assembly's intent to change the rule of discriminatory abatement.

However, a comparison of the statute before the 1965 amendment and the statute after the 1965 amendment demonstrates that the only apparent change was to eliminate the distinction between the treatment of real property and the treatment of personal property during the administration of a decedent's estate. See *In re Estate of Brinkman*, 26 Ill. App. 3d at 782. The *In re Estate of Brinkman* court noted that an almost identical problem had occurred in *Lewis*, where a question arose regarding whether the legislature intended old section 50's predecessor, section 79, to change the general rule that " 'general legacies or residuary funds must first be abated before any abatement

of the specific legacies could be required.' " *In re Estate of Brinkman,* 26 Ill. App. 3d at 783, quoting *Lewis,* 223 Ill. at 222. The *In re Estate of Brinkman* court agreed with the Illinois Supreme Court's reasoning in *Lewis* and concluded that if the legislature intended to make a different rule for the abatement of legacies and devises to fund the widow's or widower's statutory share upon renunciation of the will, the legislature should have done so "using clear statutory language to that effect." *In re Estate of Brinkman,* 26 Ill. App. 3d at 783. The 1965 amendment does not clearly indicate a change in the law in this respect. It indicates only that the legislature intended to eliminate the distinction between the treatment of real property and the treatment of personal property during the administration of a decedent's estate. Therefore, section 50, as amended in 1965, does not change the discriminatory rule of abatement by classes. See *In re Estate of Brinkman,* 26 Ill. App. 3d at 783.

Because section 2—8(d) of the Act (755 ILCS 5/2—8(d) (West 2004)) is virtually identical to section 50, as amended in 1965 (Ill. Rev. Stat. 1965, ch. 3, par. 50), we hold that section 2—8(d) of the Act does not change the discriminatory rule of abatement by classes.

The Basta stepchildren claim that even if article VII is the only residuary clause in the Will, the bequest to the Hopper children was a general legacy and thus residuary and general legacies abate simultaneously to fund a spouse's renunciation share. We disagree.

In *Kincaid v. Moore,* 138 Ill. App. 23, 29-30 (1907), the decedent's will provided for general legacies and annuities in specific dollar amounts. The circuit court held that those legacies abated for the benefit of the residuary legatees after the decedent's widow renounced the will. This ruling was based on section 79 of "An Act in regard to the administration of estates" (Ill. Rev. Stat. 1903, ch. 3, par. 78). The appellate court reversed this ruling, and ultimately, the Illinois Supreme Court approved the appellate court's analysis. *Kincaid,* 233 Ill. at 591. The appellate court stated:

> "But while the so-called specific legacies and the annuities here in question[ ] stand upon the same footing as to propriety, we do not think it is contemplated by the statute that such general legacies should abate for the benefit of residuary legatees. Nor does the Lewis case \*\*\* so hold. It is undoubtedly true, as is there stated, that under the statute general or residuary legacies must abate for the benefit of specific legacies if necessary. \*\*\* We do not understand, however, that where there is ample estate to pay both specific and general legacies, the latter must abate for the benefit of residuary legatees. Residuary legacies carry only that which is left after all express or prior dispositions of the testator have been

satisfied; hence *residuary legatees can in no case call upon general or specific legatees to abate unless it is expressly so provided by the terms of the will.*" (Emphasis added.) *Kincaid*, 138 Ill. App. at 31.

Even though the Illinois Supreme Court in *Kincaid* reversed the appellate court's decision based on the specific language in the will, the court noted its agreement with the appellate court's analysis. *Kincaid*, 233 Ill. at 591 ("[i]f no aid could be found in the will for the solution of this question[,] we would be disposed to agree with the Appellate Court, as the decision of that court is sustained by the decision of this court in [*Lewis*]").

For these reasons, the trial court properly found that the widow's one-third renunciation share must be paid from article VII, the residue of the testator's estate.

In the alternative, the Basta stepchildren argue that the widow's one-third renunciation share is payable from article I of the Will as a part of the "settlement" of the testator's estate. We disagree.

While we state no opinion regarding whether the widow's renunciation share is an expense incurred in the "settlement" of the estate, article I clearly states that any expenses incurred in the "settlement" of the estate are to be paid from the "residue" of the estate. We have already determined that article VII is the "true" residue of the estate and that the widow's renunciation share is payable from that article. This argument, therefore, is unavailing.

## CONCLUSION

For these reasons, the order of the circuit court of Christian County is affirmed.

Affirmed.

DONOVAN, P.J., and CHAPMAN, J., concur.